## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL BUSINESS AVIATION ASSOCIATION, INC., ) | |
| Plaintiff, | |
| v. | Civil Action No. 09-1089 (RMC) |
| FEDERAL AVIATION ADMINISTRATION, | |
| Defendant, | |
| and | |
| PRO PUBLICA, INC., | |
| Intervenor Defendant. | |

## MEMORANDUM OPINION

In this "reverse" Freedom of Information Act ("FOIA")[1] case, National Business Aviation Association, Inc. ("Aviation Association") sues to prevent the Federal Aviation Administration ("FAA") from releasing a list of aircraft registration numbers to Pro Publica, Inc. The Aviation Association argues that the registration numbers are exempt from compelled disclosure under FOIA Exemption 4. *See* 5 U.S.C. § 552(b)(4). FAA and intervenor defendant Pro Publica disagree, and all parties have moved for summary judgment. The FAA's decision that the list of aircraft registration numbers must be released because the list does not contain commercial information was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. § 706(2)(A). Thus, summary judgment will be granted in favor of the FAA.

---

[1] 5 U.S.C. § 552.

# I.  FACTS

Within the U.S. airspace system regulated by the FAA, all large commercial aircraft as well as many other general aircraft operate under Instrument Flight Rules.  FAA's Mot. for Summ. J. [Dkt. # 21], Ex. 1 ("Novak Decl.") ¶ 2.[2]  These rules require (1) the filing of a flight plan prior to any given flight that specifies the aircraft registration number, departure point, destination, flight route, and anticipated time en route; and (2) an operational Mode C transponder, an electronic device installed on the aircraft that sends signals to ground-based radar systems to enable the tracking of the aircraft by location, altitude, and airspeed.  *See* 14 C.F.R. §§ 91.153 & .169.  The information from flight plans and transponders is incorporated into the FAA's National Airspace System Status Information for the purpose of traffic flow management.  Novak Decl. ¶ 2.  With this data, FAA developed a Traffic Situation Display that visually depicts Instrument Flight Rule aircraft that are airborne and receiving radar services in the national airspace system.  *Id.*

In 1992, the FAA entered into a cooperative research agreement with the Air Transport Association of America to determine the value of providing Traffic Situation Display data to the aviation industry.  *Id.* ¶ 3.  The research found that providing such information would offer economic benefits to airlines by allowing increased dispatching flexibility and more efficient management of aircraft and crews.  *Id.*  As a result of this finding, in December of 1997, the FAA created the Aircraft Situation Display to Industry ("ASDI") data feed.  The ASDI feed uses Traffic Situation Display information, but filters out aircraft being used for military and other sensitive government operations.  *Id.*

In order to subscribe to the FAA's ASDI data feed, a company must enter into a

---

[2] Other aircraft, not at issue here, operate under Visual Flight Rules.  Novak Decl. ¶ 2.

Memorandum of Agreement with the FAA.  The Memorandum of Agreement sets forth the conditions and limitations by which a direct subscriber can make the ASDI feed available to users and by which the direct subscriber can market the data to secondary subscribers.  *Id*. ¶ 6.  Subscribers can obtain one of two types of ASDI data streams:  (1) a near real-time display; or (2) an historical display that is delayed by at least five minutes.  *Id*. ¶ 5.

The Aviation Association decided that it wanted the option of blocking certain aircraft from the ASDI feed.  Blocking the information at its origin — the FAA's hub site — would preclude any possibility of information about the location of those blocked aircraft from ever reaching an ASDI primary or secondary subscriber.  Accordingly, the Aviation Association asked the FAA if it could provide to the FAA a list of aircraft registration numbers to be filtered out of the ASDI feed; the FAA agreed.  *Id*. ¶ 8.  The Aviation Association now provides such a list, called the Block List, to the FAA on a monthly basis.  *Id*. ¶ 9.  The Block List contains only aircraft registration numbers.[3] *Id*.  The FAA enters the numbers from the Block List into its system, and program software filters out those aircraft from the ASDI data feed.  *Id*.[4]

The FAA does not solicit Block Lists.  *Id*. ¶ 10.  When it receives a request from the private sector to block an aircraft from the ASDI feed, it directs the requester to the Aviation

---

[3] An aircraft registration number, such as "N1234S," also known as a "tail number," is akin to a license plate number on a car.  The numbers are assigned by the FAA.  *See* 14 C.F.R. Part 47.  This number, N1234S, is cited only by way of example and does not appear on the Block List.

[4] The Aviation Association refers to the BARR (Block Aircraft Registration Request) Program in its briefs.  *See, e.g.*, Pl.'s Mot. for Summ. J. [Dkt. # 19] at 3-4.  The BARR Program is operated by the Aviation Association and not the FAA.  Under this Program, an aircraft owner can ask the Aviation Association to filter an aircraft registration number from the ASDI data feed.  The Aviation Program compiles and forwards the BARR list to the FAA, and the FAA creates the Block List from this information.

Association.  *Id*.  The FAA filters aircraft designated on the Block List for free and does not require

or receive any showing of cause for blocking the registration number for any aircraft.  *Id*. ¶ 11.  The

FAA retains only the most recently monthly Block List at any given time and does not retain the

Block List from past months.  *Id*. ¶ 12.

    On December 10, 2008, Pro Publica sent a letter to the FAA requesting a list of "all

requests to block the public's ability to track an aircraft or flight from ASDI and [Enhanced Traffic

Management System] databases since Jan. 1, 2008."[5]  Administrative Record ("AR") at 1.  The FAA

contacted the Aviation Association by telephone and advised that the FAA had made an initial

determination that the Block List was releasable in response to Pro Publica's request.  Decl. &

Certification of AR [Dkt. # 18] ¶ 3.  The FAA asked for input from the Aviation Association before

making a final decision.  *Id*.  The Aviation Association objected to the proposed release on the basis

of FOIA Exemption 4.  AR at 2-4.  Subsequently, the FAA determined that the Block List was not

protected from disclosure under Exemption 4 because it was not a trade secret or commercial or

financial information.  The FAA explained:

> The FAA has carefully reviewed the [Aviation Association's]
> objections to the release of the [B]lock [L]ist and has determined that
> the requested information does not fall within any exemption under
> FOIA.  The requested information is simply a list of aircraft
> registration numbers that are blocked from the ASDI, which prevents
> the real-time or near real-time tracking of such aircraft.  Although the
> FAA has agreed to block the real-time or near real-time display of
> registration numbers for aircraft on the [Block] [L]ist, it has never
> agreed to withhold any other disclosure of such registration numbers,

---

[5]  Pro Publica is a non-profit news organization.  It asserts an interest in investigating and
reporting on politicians' use of private aircraft, the use of private jets by corporations that have
accepted taxpayer dollars from the U.S. government during the recent recession, and the
environmental impact of aircraft use.  Pro Publica's Mot. to Dismiss or for Summ. J. [Dkt. # 29] at
1-2.

including the display of such registration numbers in other than real-time or near real-time.

. . .

To be withheld under exemption 4 of FOIA, information must be either a trade secret or commercial or financial information obtained from a person that is privileged or confidential. . . . The [Block List] is not a trade secret, nor is it commercial or financial information within the meaning of FOIA.  Further, there is no evidence that the [Aviation Association], which is the submitter, has any protected interest in the list.

AR at 5.

After receiving this letter, the Aviation Association filed this suit seeking to enjoin the FAA's release of the Block List, and the FAA agreed to withhold the Block List until the Court ruled in this matter.  *See* Agreed Order & Stipulation [Dkt. # 9].  The FOIA requester, Pro Publica, moved to intervene.  The Court granted Pro Publica's motion to intervene, *see* Order [Dkt. # 28], and now all parties have moved for summary judgment.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## B. Reverse FOIA and Review under the APA

"A person whose information is about to be disclosed pursuant to a FOIA request may file a 'reverse-FOIA action' and seek to enjoin the Government from disclosing it." *Canadian Commercial Corp. v. Dep't of Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008). Reverse FOIA cases seek review of informal agency adjudications, and thus are reviewable under Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 337 (D.C. Cir. 1989). Accordingly, the Court must decide whether FAA's determination — that the Block List must be disclosed because it is not protected by Exemption 4 — was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see also CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1154-55 (D.C. Cir. 1987).

In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error

of judgment." *Marsh v. Ore. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks and citation omitted).  At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986).  Further, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)*.*  The agency action under review is "entitled to a presumption of regularity" and the court must consider only whether the agency decision was based on relevant factors and whether there has been a clear error of judgment.  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

## III.  ANALYSIS

The FOIA mandates the disclosure of agency records unless the records are exempt from compelled disclosure by one of nine exemptions.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b).  A submitter of information to a government agency who seeks to prevent a FOIA disclosure bears the burden of justifying nondisclosure.  *Martin Marietta Corp. v. Dalton*, 974 F. Supp. 37, 40 n.4 (D.D.C. 1997).  The party who objects to the release of records must submit specific factual and evidentiary material to support its position.  *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976).

The Aviation Association contends that the Block List is protected from disclosure by Exemption 4, which protects information that is "(1) commercial or financial, (2) obtained from

a person,[6] and (3) privileged or confidential." *Pub. Citizen Health Research Group v. FDA*, 704 F.2d

1280, 1290 (D.C. Cir. 1983); *see also* 5 U.S.C. § 552(b)(4).[7] The parties dispute whether the aircraft

registration numbers that comprise the Block List are "commercial."[8]

The Aviation Association first argues that the aircraft registration numbers must

constitute commercial information because "the information at issue pertains to airplanes used by

companies, in commerce, and is thus part of a commercial enterprise. Thus, the information itself

is commercial." Pl.'s Opp'n [Dkt. # 24] at 7-8. Defining "commercial" to include everything used

by a company engaged in commerce is overly expansive, especially in light of the Circuit's

admonition that "not every bit of information submitted to the government by a commercial entity

qualifies for protection under Exemption 4 . . . ." *Pub. Citizen Health Research Group*, 704 F.2d

at 1290. The term "commercial" must be given its ordinary meaning, *id.*, but it is not confined only

to records that reveal commercial operations or the income-producing aspects of a business. *Baker*

*& Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006).

The FAA's decision that the Block List does not include any commercial information

is "entitled to a presumption of regularity" and this Court should consider only whether the decision

was based on relevant factors and whether there has been a clear error of judgment. *Citizens to Pres.*

---

[6] Records are considered to be "obtained from a person" as long as they were submitted by a "partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). This element is not in dispute.

[7] Exemption 4 also protects trade secrets from disclosure. Trade secrets are not at issue in this case.

[8] The parties also dispute whether the information was voluntarily provided to the FAA and whether the information is confidential. Because the Court holds that the FAA was not arbitrary or capricious in finding that the Block List is not commercial and because this is a threshold issue, the Court need not address the issues of voluntariness or confidentiality.

*Overton Park*, 401 U.S. at 415.   In reviewing the FAA's decision, it is helpful to look to *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, a reverse FOIA action analogous to this one.   There, a government contractor (CNA) sought review of a decision of the Office of Federal Contract Compliance Programs to release affirmative action information that the contractor had provided to the government as a requirement of its federal contract.   830 F.2d at 1134.   The agency decided, over CNA's objection, that FOIA Exemption 4 did not bar disclosure.   On appellate review, the D.C. Circuit considered whether the agency's prediction of the commercial impact of the disclosure was reasonable in the face of CNA's plausible alternative prediction.   For example, CNA complained that release of information regarding job applicants would allow its competitors to direct their recruiting efforts to the best sources of potential employees.   The agency found that the data would "not be of any particular help to competitors since the employee-source and employee-position categories are broad, and the applicant pool is a function of the labor market and beyond an individual competitor's control."   *Id*. at 1155.   The Circuit held that the agency did not act arbitrarily:

> These and other similar contentions presented no more than two contradictory views of what likely would ensue upon release of information that CNA sought to protect.   In each case, [the agency] retorted with reasonable and thorough prognoses of its own.   We are thus confronted by the type of judgments and forecasts courts traditionally leave largely to agency expertise, with judicial review limited by the narrow standard sanctioned.   After careful consideration of [the agency's] decision, we are satisfied that it cannot in any way be characterized as arbitrary, capricious, or an abuse of discretion.

*Id*.

In this case, the Aviation Administration speculates that if the Block List is released, competitors will be able to discovery sensitive commercial information.   Robert Lamond, Director

of Air Traffic Services and Infrastructure for the Aviation Association, contends that release of the Block List will result in the release of ASDI data which in turn "can lead to knowledge of sensitive negotiations, likely business transactions or future movement of senior company leadership possibly jeopardizing their security as well as proprietary business information.  Not only does this disclosure place an individual's personal security at risk but [it] can also inappropriately influence the value of a public company and have adverse competitive effects."  Pl.'s Mot. for Summ. J. [Dkt. # 19], Ex. 1 (Lamond Decl.) ¶ 5.

Contrary to the Aviation Association's contentions, the FAA determined that the aircraft registration numbers themselves do not constitute commercial information.  The FAA's determination was reasonable, as the Block List is a list of numbers only, unaccompanied by narrative.  The release of Block List information would not provide the requester with any real-time or near real-time data regarding aircraft location.  A FOIA request takes days or weeks to process. *See* Novak Decl. ¶ 20.  Then, the recipient of the information would have in hand only registration numbers; it would have to take further steps to obtain any additional information.  The recipient could use an aircraft registration numbers to obtain the owner's name and the make and model of the aircraft via an internet search on the FAA's publically available website.  *See* http://registry.faa.gov/aircraftinquiry (last visited Feb. 19, 2010, 11:00 a.m. EST).  The recipient could also use the number to obtain historical flight tracking data, including a flight's place of origin and destination and its estimated times of departure and arrival.  Such historical tracking data is publicly available via a FOIA request for a search of FAA records in the Traffic Flow Management System.  Novak Decl. ¶ 17.  In sum, the release of the registration numbers whose location information was blocked from the ASDI data stream in days and weeks past would enable the

recipient to determine the owner of the aircraft, a description of the aircraft, and historical location information.  It would not enable the recipient to:  (1) determine the identity of the occupants of any particular flight; (2) discover the business purpose of any flight; (3) track the flight in real-time or near real-time; or (4) discern the reasons why the aircraft owner sought to block the flight information from the ASDI data feed.  *Id*. ¶¶ 21 & 23.  The Aviation Association's speculation that the registration numbers might be used to obtain historical location information and that location information might be used for insight into the nature of a company's business dealings does not convert the *aircraft registration numbers themselves* into commercial information.  The Aviation Association's prediction of the dire consequences of release of the aircraft registration numbers was countered by the FAA's reasonable determination that the Block List simply does not contain commercial information.  The FAA's decision that the Block List does not contain commercial information was not arbitrary, capricious, or an abuse of discretion.

Despite the fact that the release of aircraft registration numbers would not provide the identity of the occupants of any aircraft, the Aviation Association argues that release of the Block List will compromise the privacy and security of the blocked aircraft and their often high profile occupants.  These arguments do not support the Aviation Association's contention that the information is exempt from disclosure under Exemption 4, which deals with confidential *commercial* information and not with personal privacy or security.  "Personal privacy concerns are not a relevant concern under [Exemption 4], but are under Exemption 6 [5 U.S.C. § 552(b)(6)]."  *Multi AG Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1228 (D.C. Cir. 2008) (quoting *Nat'l Parks*, 547 F.2d at 686)) (internal quotation marks omitted).  Exemption 6, however, does not extend to protect the privacy interests of businesses or corporations.  *Id*. at 1228.  Thus, privacy concerns are not relevant

in determining whether Exemption 4 applies.   Further, because the Block List contains only registration numbers and  release of the information only permits investigation of historical and not real-time location data, it is highly unlikely that the disclosure of the List would impact the security of aircraft or aircraft passengers.  Certainly, the FAA was not arbitrary or capricious in rejecting the argument.

      The Aviation Association also contends that the Block List is commercial information because it is a list of numbers similar to zip code data that a district court found to be commercial information in *Center for Public Integrity v. FCC*, 505 F. Supp. 2d 106 (D.D.C. 2007).  This is a false comparison.  In *Center for Public Integrity*, the court noted that an analysis of customer zip codes for a business required to file with the Federal Communications Commission "over time could reveal where customers had been acquired or lost" and "could also provide valuable information about where [a] filer is focusing its efforts to acquire customers and [about] the overall financial health of the FCC filer."  505 F. Supp. 2d at 116-17.  Disclosure of the Block List, as explained above, would only reveal aircraft registration numbers — and further research using such numbers could reveal limited information, *i.e.*, the name of the owner who sought to block data from the ASDI stream, the make and model of the aircraft, and historic location tracking data.  The FAA reasonably concluded that none of the information revealed by the disclosure of the Block List has commercial significance.[9]

---

[9] FOIA requires that an agency disclose reasonably segregable portions of a record, after redaction of all exempt portions.  5 U.S.C. § 552(b).  This case does not present an issue of segregability, as the Block List may be released in its entirety.  No portion of the List is protected by Exemption 4.

## IV.  CONCLUSION

For the foregoing reasons, the FAA's motion for summary judgment [Dkt. # 21] will be granted, and the Aviation Association's motion for summary judgment [Dkt. # 19] will be denied. Pro Publica's motion to dismiss or for summary judgment [Dkt. ## 29 & 32] will be denied as moot. A memorializing Order accompanies this Memorandum Opinion.

Date: February 26, 2010                    _____/s/_____
                                            ROSEMARY M. COLLYER
                                            United States District Judge